IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

FILED

04 MAY 17 AM 8:30

U.S. DISTRICT COURT
N.D. OF ALABAMA

CONSTRUCTION MATERIALS,    )
LTD, INC.                  )
                           )
    Plaintiff,        )
                           )
v                          )    CV-02-RRA-1155-NE
                           )
Equal Employment Opportunity  )
Commission ("EEOC")        )
                           )
    Defendant.        )

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT AND PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT**

Now comes the plaintiff in opposition to the Defendant
EEOC's Motion for Summary Judgment in this Freedom of Information
Act (FOIA) action (5 U.S.C. § 552) and states that the summary
judgment motion is due to be denied to the defendant for the
reasons below, and plaintiff further moves that summary judgment
be granted to the plaintiff, pursuant to FRCP 56, for the
following reasons:

1.  The defendant has admittedly failed, repeatedly and
without regard to its statutory duty, to timely make its records
available to the plaintiff;

2.  Only **after** the plaintiff filed a lawsuit to enjoin the
defendant to produce the government's records, did the defendant,
finally and far outside the limits set by Congress and its own



1

regulations, produce the requested records;

    3.  The plaintiff's action in filing this action caused the production of the agency records, which was one important goal of this action thereby meaning that the plaintiff substantially prevailed by accomplishing this central objective.  Based on the defendant's summary judgment evidence alone, only by filing a lawsuit did the plaintiff achieve the results that months of mere letter requesting could not and had not produced; and

    4.  The plaintiff requests injunctive and declaratory relief, which relief is not moot since it will insure that the agency will timely comply with its statutory duties.  Further, the Court's declaration and/or injunction requiring the agency to develop and prioritize its responsibilities of disclosure beyond its current and undisputed haphazard, chaotic approach will serve the general public.  Ironically, EEOC offers as its defense in this case the very facts that justify this Court's correction by Order.  By entering an order implementing a plan requiring EEOC to follow the applicable FOIA law and its own FOIA regulations applicable to creating appropriate systems, timely responses and notification of time extensions to requesting parties, the Court can effectuate a public service that relieves all of those deprived of timely responses from having to beg, wait, sue or simply give up.

    5.  The plaintiff is not a position to dispute most of the

2

facts as alleged by EEOC in its summary judgment papers due to prevention of discovery.  The plaintiff did attempt on August 5, 2002, to notice the deposition of the affiant for EEOC, Charles E. Guerrier and to have the agency produce documents relating, *inter alia*, to all documents relating to the actual response time taken by EEOC when a citizen makes a FOIA request and all other complaints charging EEOC with a failure to respond properly to document production requests made pursuant to FOIA. (Pl. Ex. 3, Notice of Deposition to Charles E. Guerrier and Request for Production).  That discovery effort was immediately met with "Defendant's Motion for A Protective Order Or An Order To Preclude Discovery", filed on August 9, 2002.  The plaintiff's August 2002, discovery was then held in abeyance until an order issued on April 1, 2004, denying all discovery to the plaintiff. (R. 13)

The denial of summary judgment alone to the defendant, or to both parties, however, permits this case to go forward with the exploration of the agency's self-proven disarray and disregard of the law's time demands and even its own rules in responding to FOIA requests. Undoubtedly, the most efficient way to address the known agency deficiencies is by granting the plaintiff its summary judgment request and entering appropriate relief orders.

**ARGUMENT**

**1.  The defendant Failed Repeatedly and Without Regard to its Statutory Duty Or Its Own Regulations to Timely Make its Records Available to the Plaintiff.**

3

Since 1996, EEOC has been required by the Freedom of Information Act (FOIA) to produce its records, subject to some records protection from disclosure, known as exemptions, within the time defined by Congress as follows:

(6)(A) Each agency, upon any request for records ....shall (i) determine within **twenty days** (excepting Saturdays, Sundays and legal public holidays) after the receipt of any such request whether to comply with such request and shall immediately notify the person making such request of such determination and the reasons therefore,

(B) **In unusual circumstances....the time limits...may be extended by written notice** to the person making such request setting forth the unusual circumstances for such extension and the date on which a determination is expected to be dispatched. **No such notice shall specify a date that would result in an extension for more than ten working days**.... (5 U.S.C. §552(a)(6)(A)(i) (ii))(Emphasis supplied)

Each agency is required to publish its own regulatory guidelines for the public access to copies of agency files. 5 U.S.C. § 552(a)(1). EEOC undisputedly did create such guidelines, which, relevant to this case, provided that, once EEOC's regional attorney had actual notice of the FOIA request, EEOC required itself to respond in no less than **twenty** days to

4

the FOIA request. 29 CFR §1610.9(a)  Plaintiff's notice to EEOC's regional attorney, Charles E. Guerrier, was admittedly satisfied when Guerrier, actually the received the first FOIA request addressed to Pinkey Johnson in September 2001. (Def. Ex. A, para. 6)  Action making EEOC records "promptly available" in September 2001 was then triggered. 29 C.F.R. §1610.2.

EEOC's own regulations anticipate, in fact, that the officer designated may not be the addressee, and that circumstance, applicable in this case, does not defeat the duty to produce since EEOC's rules provide as follows:

> Any Commission official who receives a written Freedom of Information request shall promptly forward it to the appropriate official specified in paragraph (a) or (b) of this section. 29 C.F.R. §1610.7(e).

The plaintiff, Construction Materials, Ltd. Inc. sought and needed that information requested under FOIA to assist it in assessing the bona fides of pending Title VII litigation against it filed by Rachael Cain and determining its correct course of action. (Def. Ex. 1; Pl. Ex. 1-C: R. Cain Complaint in CV-01-S-2752-NE).  Despite the clear statutory mandate to notify the requester of any needed extension, EEOC then also ignored that responsibility in its entirety for fear of embarrassment at having to explain that it lost/misplaced the records, was disorganized and just could not get around to satisfying its responsibilities, which, needless to say, is not among the three statutory "unusual circumstances" permitting an agency extension

for production. 5 USC §552(6)(B)(i)(ii).; 29 C.F.R. §§1610.9, 1610.10.

Plaintiff Cain's EEOC charge and any other statements and/or evidence gathered by EEOC during its processing of her charge, were important and valid materials for learning about the plaintiff's claims and necessary for the defendant's articulation of its defense and exploration of the legitimacy of plaintiff's claims. (Pl. Ex. 1-E: J. Johnson order denying protection of tape recording made by plaintiff). This beginning effort to determine the truth or falsity of civil rights claims has never determined by any court as a mere "commercial" request having no public significance. (Def. Memo. at p. 10) Further, EEOC's factually and legally unsupported argument that "the subject Cain charge file is not of public import" is contrary to the Supreme Court's decades old recognition that every civil rights plaintiff takes on the mantel of the private attorney general. See, *Newman v Piggie Park Enter.,* 390 U.S. 400 (1968)*.* This decades old holding contradicts EEOC's argument that some civil rights claims are unimportant and ignoring them is without significance. Prior to the more specific enactments governing attorney's fees, the private attorney general theory was accepted by nine of the then eleven circuit courts of appeal then in existence and covered a wide variety of subject matter areas, including school desegregation, first amendment violations, fourth amendment

6

violations, employment law and teacher dismissals. *See, e.g.*, *Cornist v Richland Parish Sch. Bd*, 495 F2nd 189 (5th Cir. 1974); *Stolberg v Members of the Bd. of Trustees*, 474 F.2d 485 (2nd Cir. 1973); *Donohue v Staunton*, 471 F2d 475 (7th Cir. 1972), *cert. denied*, 410 U.S. 955 (1973); *Stanford Daily v Zurcher*, 366 F. Supp. 18 (N.D. Cal.1973), *aff'd*, 550 F2d 464 (9th Cir. 1977), *rev'd on other grounds*; *Sims v Amos*, 340 F. Supp, 691 (M.D. Ala. 1972)(three-judge court), *aff'd mem.*, 409 U.S. 942 (1972).

On the contrary, Congress and the Courts repeatedly have stressed the importance of identifying needed civil rights measures so as to identify and correct violations.  To that end, the defendant has a need to know whether there is some evidence that requires immediate resolution of a likely violation or whether the facts present the other end of the spectrum:  an entirely baseless charge, or perhaps, somewhere in between.

Regardless of which circumstance exists, neither is merely "commercial" any more than alleged discriminatory deprivation of voting rights is merely commercial because a rejected voter intends to vote his economic interests in a presidential election.  If EEOC views the administrative charges of plaintiffs and the responses of potential defendants as having "no public import", then the agency is need of more congressional attention than this mere district court action can generate.

It is not clear whether the government's argument that the

defendant's interest is merely "commercial" is an effort to stuff
civil rights into the same bag as efforts to determine the
business secrets of a competitor, or if characterizing the
important business of sorting out alleged civil rights violations
as "commercial" is merely designed to attach the language of
favorable cases in other areas of the law simply to shore up its
summary dismissal arguments in this case.

To the plaintiff, Construction Materials, time was of the
essence in this FOIA matter since, ordinarily federal judges
issue scheduling orders promptly after litigation has begun, and
those orders include discovery cutoffs that do not permit excuses
and delays except for demonstrated good cause.  Typically, and in
even in this case, the assigned magistrate judge entered just
such a scheduling Order on June 19, 2002, just forty-one days
after the complaint was served. (R. 6)  That order differs from
other scheduling orders of federal judges only in that it also
directs the parties to notify the Clerk in writing if they wish
for the undersigned magistrate judge to exercise jurisdiction
pursuant to 28 USC §636(c) for all purposes including
determination of any dispositive motions, trial and final
judgment. (*Id.*)

It is not likely that any trial judge or magistrate judge
would have warmly received, much less granted, a defense request
to delay judicial processing until such undefined time as that

date when EEOC could organize its burdensome "queue" of FOIA requests and search the premises for missing/misplaced records. Further delays of pending Title VII litigation until that time when a separate lawsuit could be filed that would energize EEOC to actually search its premises for relevant misplaced/lost documents simply would not be tolerated.  It is worth noting that it was not until the instant litigation had reached the summary judgment stage **two years after filing this action**, that EEOC offered any justification, however poor, for its months of unlawful failure to produce documents and unlawful failure to give notice of any reason justifying the need for an extension.

The Court may also consider the fact that the ultimate production of the FOIA information had some relationship to the termination of that civil rights litigation in that once the defendant had the information requested from EEOC, the underlying claims of Rachael Cain were dismissed by joint stipulation within 42 days after EEOC's mailing of the FOIA documents to the undersigned counsel. (Pl. Exs. 1-B; 1-F)  The resolution of civil rights claims together with the benefit of clearing one civil rights case from the crowded federal docket cannot be said to be merely "commercial".

This case is about EEOC's total failure to timely produce records requested and requested and requested until a filed lawsuit awakened its sense of responsibility. (Def. Ex. 1,

Attachments B, C, D, E, F)  This is not litigation about subtle
or even unsubtle "*Vaughn* Index" issues.  This case is about
fundamental compliance with the clear statutory mandate to create
an open and responsive government and specifically to produce
government records "promptly" and short of litigation.  The
record in this case is now replete with the admissions that this
EEOC office has simply failed to create a system for timely FOIA
production and that it will not do so unless ordered by this
Court.

    Certainly Congress, in enacting §552, intended two outcomes:
 first, the public would have access to most of the government's
documents, and secondly, the government would produce those
documents promptly and within days of a request and without the
need for litigation.  Starkly and factually presented by the
defendant through EEOC's regional attorney Guerrier, (Def. Ex. 1,
para. 6) who himself actually received the September 5, 2001,
FOIA request on September 18, 2001, the duty of the defendant to
respond promptly and within twenty days was then fixed.  After
241 days from that actual September 2001 request and after five
additional plaintiff's request letters for the government
records, some of which the defendant says they have never yet
found, and only after the plaintiff filed this judicial action,
did the defendant comply with the September 2001 FOIA request.
The defendant excuses itself saying it was merely "tardy" and

argues there should be no consequences to that in a case of no
public importance. (Def. Memo. p. 7)

EEOC accurately states that the plaintiff did first address
its request to the person at EEOC, known as Pinkey Johnson, but
that was because on many other occasions, EEOC had personally
instructed plaintiff's counsel and her staff that Ms. Johnson was
the person to whom such requests should be addressed and that
instruction was followed. (Pl. Ex. 2-A-C: Affidavit of Barbara
Houts) EEOC never gave notice that Ms. Johnson was no longer with
the agency, again, until **after** this lawsuit was filed. EEOC could
have earlier simply conveyed those facts when Guerrier wrote in
his September 2001 first response to Reeves improperly denying
the plaintiff access to any documents. (Defendant's Ex. A-Ex. 1)

EEOC cannot and does not argue now that the records
requested by the plaintiff were exempt from production.  EEOC
cannot and does not argue that it produced the records requested
by the plaintiff in the timely and prompt manner required under 5
U.S.C. §552.  Instead, EEOC argues that the first FOIA request
letter was inappropriately addressed while acknowledging the
actual receipt of the first request by the person to whom EEOC
says in litigation should have been the addressee for the
request. (Def. Ex. A. paras. 5-6)

EEOC now asks to be excused from its statutory obligations
because "the processing queue for all FOIA requests was quite

long", the "unexplained absence of a 'temporary location card'
for the file" applicable to Rachel Cain was lost, an employee
quit, another employee who had failed to check out the file and
who was not supposed to respond to FOIA requests had the file,
and because the "burden" of 500 FOIA requests was exacerbated,
because the responsible attorney, apparently not Guerrier, quit
thereby leaving EEOC shorthanded in managing the entire FOIA
"burden". (See Def. Memorandum pp. 4-5)  None of these enumerated
agency problems are in the statute relieving EEOC of its mandated
duty for defined promptness, which is measured by days and not
months.  The statute excuses the government's delays only under
three conditions, none of which EEOC even asserts in this case. 5
USC §552(6)(B)(iii)(1)(11)(111).

    If these explanations of wholesale agency disorganization in
the Birmingham district office,1 if not incompetence, and
disregard for statutory mandates, do not support the need for an
injunction and/or declaratory relief, then no facts will meet
that standard.  EEOC must be required to organize itself so that
it can comply with the "burden" of hundreds of FOIA requests, if
for no other reason than Congress said so.  Clearly, the agency
had particular problems locating the Cain file once litigation

---

1 The Birmingham district office's problems of disregarding multiple 2001 FOIA
requests, failing to notify of extensions, lost records, misplaced files,
etc., do not seem to be a part of any larger default by EEOC offices generally
since the 2001 "Report of the Equal Employment Opportunity Commission On Its
Administration of the Freedom of Information Act, 5 U.S.C. section 552 for FY
2001" shows, at Section V11, "Compliance with Time Limits/Status of Pending
Requests", that the median number of days to process nationwide 16,067

was instigated, but just as clearly, hundreds of other FOIA requests were also being given non-compliant treatment, which the government characterizes as just being "tardy".  At the same time, EEOC cites in its supporting memorandum for summary judgment the fact that another government agency has been even more "tardy" and gotten away with it. (Def. memo, p. 7)  But at least in *Frydman v Dept. of Justice*, cited at defendant's memorandum page 12, the Tenth Circuit affirmed a decision that detailed a response, albeit ultimately inadequate, within 31 days from the original request.  Then administrative appeals and finally a court challenge followed, which discussion centered on only the relief of attorney's fees.  That is not this case.

The plaintiff, Construction Materials has, from the beginning, sought declaratory and/or injunctive relief and agreed at the outset to resolve the whole case, with a consent judgment and minimal fees and costs paid, as soon as the records were produced. (Pl. Ex. 1-D)  Systemic improvement of EEOC's FOIA response plan was the original goal of the plaintiff and that remains true to this date. Because that resolution was not accepted, the whole process has moved forward with the plaintiff still seeking that broad relief that will make this statutory scheme work for the public at large.

At the very least, declaratory relief that the agency must comply with the law and take steps to put the people and

requests is 19 days.

organizational systems in place to achieve compliance with its
mandatory duties is necessary and appropriate.  Having a
responsive local district EEOC office ordered to fulfill its
duties of an open government would be a very fine service and
would benefit thousands of individual charging parties and
respondent companies who are drawn into the EEOC process every
year.

Notably, the defendant does not argue that the plaintiff's
FOIA request was unusual or difficult or complex in understanding
or required coordination with another agency or any other factor
that would distinguish this particular request from all those
other plain vanilla "burdensome" requests in the queue at EEOC in
the Birmingham district office.  It simply lost the file and,
contrary to the Guerrier affidavit, may not have taken any action
whatsoever until May 14, 2002, when Guerrier first telephoned the
undersigned counsel for the plaintiff about its FOIA request.
(Pl. Ex. 3: May 14, 2002 file memo of telephone conversation of
Reeves and Guerrier).  Indeed, EEOC argues that its myriad
problems, set out in the Guerrier affidavit, of merely processing
this FOIA request timely were "routine"!  Where Congress mandates
promptness in granting records access to the public and speaks in
terms of compliance within days and permits production
extensions, and notifications thereof, under tightly defined and
limited circumstances of not more than another ten days, it is

14

difficult to even imagine the massive snubbing that EEOC's
district office has given to Congress, who ordered action, much
less the snubbing to mere private citizens i.e., the affected
public who expect especially the government to comply with its
own laws and rules without having to sue.

Even though Guerrier states that he is responsible for the
FOIA requests as EEOC's regional attorney, he asserts as true
that he became "actively involved in the subject FOIA request for
the first time since November 2001" on April 23, 2002, when he
began an agency wide search for the lost records. This claimed
April 2002 search date is a factual dispute. See, Pl. Exs. 2 and
3.  EEOC was actually served the instant complaint on Friday, May
10, 2002, and Guerrier called plaintiff's counsel on Friday, May
14, 2002, saying that he knew of no requests ever made for
records.  The records sought were mailed to the plaintiff's
counsel on the Tuesday, May 16, 2002. (*Id.*; Pl. Ex. 4)  That
means that EEOC did nothing at least for six months and then
curiously explains the ultimate location/production of the lost
records of "May 16, 2001 (*sic*)[the actual date of production was
one year later in 2002] because that is when the EEOC's
processing was complete." (Def. Memo. p. 9)(See, Def. Ex. A-7 for
the correct date of EEOC's production). EEOC could not have been
"processing" the lost requested records, as now claimed in this
action, since the agency also claims that it did not even begin

15

to look for FOIA documents, much less find them, until April 2002. (Def. Ex. 1)

In truth, EEOC's processing was complete when the agency issued its right to sue letter to Rachael Cain ending its involvement in the administrative charge on September 4, 2001. (Pl. Ex. 1-A, p. 5)  It is disingenuous to claim that any agency "processing" was going on at all for the following months when EEOC admits that it did nothing during those months with that file, including putting the file where it could be found when requested. (Def. Exs. A-3, 4 and 5)  EEOC only became concerned about this file and about its FOIA duties perhaps in late April 2002, when Guerrier swears that he was notified litigation was in the offing. (Def. Ex. A-6)  In fact, the threat of litigation was insufficient to trigger EEOC's effort to respond to the plaintiff's FOIA request, since the facts point more convincingly to agency's lacking compliance motivation until actually served with a complaint on May 10, 2002. (Pl. Ex. 4)  Congress did not intend any executive agency to ignore FOIA requests for a closed investigative file for months, and the statute does not excuse chaotic response systems that can finally cough up files only after frantic full office searches post service of a lawsuit.

The impetus for Guerrier's claimed action in April 2002, according to the defendant, was solely based on the receipt of the plaintiff's counsel's April 23, 2002, hand-delivered letter

to the District Director, saying that the total failure of EEOC
to respond to these repeated requests was going to cause
litigation. (Def. Ex. A, at para. 9)  Said another way, this EEOC
office had no concern with private citizen's multiple requests,
which could be ignored, but the promise of the attention of
judicial oversight was serious enough to prompt some response.
When an agency cannot be motivated in months of polite requests,
will not and did not explain any necessary extension, declaratory
and/or injunctive relief to remedy these admitted, persistent
violations and self-described disorganization are appropriate.
*Long v I.R.S.*, 693 F2d 907 (9th Cir. 1982); *Swan View Coalition v
Department of Agriculture*, 39 F.Supp.2d 42 (D.D.C. 1999)

     Now, more than 200 days later and in April 2002, (accepting
for the sake of argument only the defendant's version), with the
regional attorney's personal attention only now focused on the
FOIA request, and the threat of litigation received at least by
April 23, 2002, the defendant's own evidence is that there was
still more disorganization within the agency preventing the
defendant's compliance. (Pl. Ex. 1-A, page 1)  EEOC explains the
chaos:  "Closed charge files are supposed to be in the file room,
or if someone checks out a file, a ledger card is supposed to be
left in its place to identify who took the file.  The file was
not there and neither was the ledger card," as justification for
its failure to produce until May 16, 2002. (Def. Ex. A)  In

17

truth, it was only in May 2002, that Guerrier, actually paid

personal attention to the request first made in September 2001,

and only then that Guerrier conducted a search and "personally

located the file in the possession of a Commission employee

*without FOIA responsibilities*". (*Id*. at para. 10)(emphasis

supplied)(Pl. Ex. 2-C; Pl. Ex. 3: May 14, 2002, memorandum of

Reeves May 14, 2002, telephone conversation with Guerrier).

The dysfunctional agency picture exposed through this

litigation merits framing and enjoining so that the prompt

statutory scheme actually works and so that EEOC employees

understand that access to its records are not mere burdens but a

part of open government designed for the benefit of the people.

Open government does not mean production of some records when the

agency gets motivated to make the time.  Even though the agency

should have and was required to provide an explanation for any

delay in 2001, EEOC was certainly embarrassed by these failures,

which the agency covered up until this action forced the issue

and the Guerrier affidavit explanation of FOIA chaos appeared.

**2.   Only after the plaintiff filed a lawsuit to enjoin the
       defendant to produce the government's records, did the
       defendant, finally and far outside the limits set by
       Congress, produce the requested records**

As noted above, the dates and manner of the plaintiff's FOIA

requests and EEOC's responses, or more accurately, failure of

response prior to litigation are not in dispute.  The agency's

own motion for summary judgment admits that it was only the

18

threat of litigation that prompted compliance causing a unique and file-specific search for the Construction Materials-Cain records in order to respond.  Even if true, the agency did not produce the records until after suit was filed.  Under these circumstances, summary judgment in favor of the offending agency is particularly inappropriate since the very problems raised by the plaintiff are not only capable of repetition but likely to be repeated unless judicially addressed. *Hercules, Inc. v Marsh*, 839 F2d 1027 (4th Cir. 1989).  Of course, the detailing of the agency problems in responding in this instant case and to FOIA requests generally, would never have surfaced had not EEOC already been required by previous Court decisions to file a detailed affidavit on summary judgment setting out its search methods and the structure of EEOC's filing system. *Katzman v C.I.A.*, 903 F.Supp.434 (ED NY 1995)

Even at this juncture, EEOC has still failed to provide the Court with its description of the fabric of its filing system for handling FOIA requests although we are instructed by the agency's summary judgment evidence of the holes and problems of even finding its own records. Clearly, EEOC failed to follow its own record keeping system regulations and its own regulations regarding time for production and for notification if those times cannot be met. 29 C.F.R. §§ 1610.13, 1610.10(d), 1610.9(a)(b).

**3.   The Plaintiff's Action in Seeking Declaratory and/or Injunctive Relief Is Warranted.**

Where the plaintiff has accomplished but one goal after filing suit and has sought from the outset declaratory and injunctive relief to remedy systemic production and notification problems, the "tardy" production of records is not sufficient relief.  If EEOC does not rectify its non-responsiveness, or at best, sloppy and erratic FOIA response methodology, then the public will continue to suffer either in silence by not having the resources or the will to fight or by individually raising the same issues in Court over and over.

Declaratory and/or injunctive relief can establish a mechanism that requires EEOC response to FOIA requests just where Congress intended:  at the top of the list of things to do promptly. The plaintiff, while requesting attorney's fees in the complaint, does not merely want a reimbursement of its costs and expenses.  It wants solid progress shown that this action has been a necessary and worthwhile process that will be applicable to its own future FOIA requests and to those filed by others, whether plaintiff or defendant.

If this action is summarily dismissed in favor of EEOC, then EEOC, on the other hand, can be confident that it has no duty to follow its own rules in addition to our national laws.  It can read and lose FOIA requests with impunity; it need not notify a requester of the need for any ten (10) day extension since there is no consequence to self-granting extensions of months, or

perhaps longer, duration and all without the statutory delay notice to the requester. EEOC will not need to make any showing that it required extra time recognized in the statute to consult with another agency for the materials or make field requests of its own offices, or more time to search and collect voluminous amounts of material or even to "with all practicable speed" meet with another agency that has a substantial interest in the request or the subject matter of the request. 5 USC §552(6)(B)(iii)(I)(II)(III). This EEOC field office can just sit tight as the FOIA requests pile up on somebody or other's desk. If the requester files a lawsuit, EEOC argues in fact, then EEOC can gear up and make an all-out effort to find the records and this "system" is without any consequence of having violated the mandates of FOIA. Said simply, that would be wrong.

In any case, EEOC's post-suit document production does not warrant summary judgment regarding declaratory and/or injunctive relief or fees on account of mootness since any motion for fees and costs is ancillary to the underlying action and survives independently under the Court's equitable jurisdiction. *GMRI, Inc. v. EEOC*, 149 F3d 449 (6th Cir. 1998). As a last matter, the government spends a considerable amount of its briefing effort on the propriety of denial of fees and particularly fees spent on administrative challenges. There are no costs associated with administrative challenges preceding this action since there were

no such challenges.

## 4. CONCLUSION

For all of the foregoing reasons, the summary judgment requested by the defendant is due to be denied and for these same reasons and supporting statutory and case law, the summary judgment requested by the plaintiff is due to be granted.

Submitted by,

Susan Williams Reeves
714 South 29th Street
Birmingham AL 35233-2810
205-322-6631
Bar ID No. 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

Attorney for Plaintiff

CERTIFICATE OF SERVICE

I, the undersigned attorney, do hereby certify that, prior to or immediately after filing the foregoing with the Court, I mailed or delivered a copy to:

___✓___ Hand Delivery

_____ Facsimile Transmission

_____ U.S. Mail, Postage Prepaid

Ed Ragland, Esq.
United States Attorney
1801 4th Avenue North
Birmingham AL  35203-2101

Date _May 17, 2004_

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

CONSTRUCTION MATERIALS,      )
LTD, INC.                    )
                             )
     Plaintiff,              )
                             )
v                            )      CV-02-RRA-1155-NE
                             )
Equal Employment Opportunity )
Commission ("EEOC")          )
                             )
     Defendant.              )

## INDEX TO PLAINTIFF'S EXHIBITS

**NO**.                 **Description**

1.              Affidavit of John Crews

                1-A EEOC File Requested by Construction Materials, Ltd. Inc.
                1-B Order of Dismissal by Judge Johnson in CV-01-J-2752-NE
                1-C Complaint filed by Rachel Cain in CV-01-J-2752-NE
                1-D June 5, 2002 Reeves letter to Ragland, counsel for defendant
                1-E Order "Denied" on February 22, 2002 in CV-01-J-2752-NE
                1-F May 16, 2002, Guerrier letter to Reeves enclosing EEOC file

2.              Affidavit of Barbara Houts

                2-A July 18, 2001, Reeves letter to Pinkey Johnson: EEOC 130-AO-2123
                2-B September 25, 2001, Guerrier letter to Reeves in EEOC 130-AO-2123
                2-C May 14, 2002, Reeves Office Memo re: teleconference with Guerrier
                EEOC attorney

3.              Affidavit of Susan Reeves
                Attached: Discovery Notice to Charles E. Guerrier with Rule 34 Request

4.              Proof of service date of Complaint in CV-02-RRA-1155-NE for May 10, 2002

# SEE FILE FOR EXHIBITS