IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| CONSTRUCTION MATERIALS, LTD., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| vs. | ) | CIVIL ACTION NO. 02-RRA-1155-NE |
| | ) | |
| | ) | |
| EQUAL EMPLOYMENT | ) | |
| OPPORTUNITY COMMISSION, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**
(Re Defendant's and Plaintiff's Motions for Summary Judgment, ct. docs. 14 and 19)

Before the court is the defendant's and the plaintiff's motion for summary judgment.[1] This case involves the plaintiff's request for EEOC records under the Freedom of Information Act (the Act) and the defendant's failure to provide the records within the required time. The material was supplied ten (10) days after this lawsuit was filed. The plaintiff seeks an award of attorney's fees, solely on the basis of the Act's fee-shifting statute, and declaratory relief. For the reasons set out herein, it is recommended that the plaintiff's motion for summary judgment be denied, and that the defendant's motion for summary judgment be granted and

---

[1] "Mere general allegations which do not reveal detailed and precise facts will not prevent the award of summary judgment." *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 592 (11th Cir. 1989). Furthermore, Fed. R. Civ. P. 56(c) "saddles the non-movant with the duty to 'designate' the specific facts in the record" supporting his claim. *Jones v. Sheehan, Young & Culp, P.C.*, 82 F.3d 1334, 1338 (5th Cir. 1996). "Rule 56 . . . does not impose upon the district court a duty to survey the entire record in search of evidence to support a non-movant's opposition." *Id.; see also Resolution Trust*, 43 F.3d at 599 ("There is no burden on the district court to distill every potential argument that could be made based upon the materials before it on summary judgment.")

attorney's fees denied and this action dismissed.[2]

The Act states:

(6)(A) Each agency, upon any request for records.... shall(I) determine within twenty days .... after the receipt of any such request whether to comply with such request and shall immediately notify the person making the request of such determination and the reasons therefore....

B)(I) In unusual circumstances as specified in this subparagraph, the time limits prescribed in either clause (I) or clause (ii) of subparagraph (A) may be extended by written notice to the person making such request setting forth the unusual circumstances for such extension and the date on which a determination is expected to be dispatched. No such notice shall specify a date that would result in an extension for more than ten working days, except as provided in clause (ii) of this subparagraph.

(ii) With respect to a request for which a written notice under clause (I) extends the time limits prescribed under clause (I) of subparagraph (A), the agency shall notify the person making the request if the request cannot be processed within the time limit specified in that clause and shall provide the person an opportunity to limit the scope of the request so that it may be processed within that time limit or an opportunity to arrange with the agency an alternative time frame for processing the request or a modified request. Refusal by the person to reasonably modify the request or arrange such an alternative time frame shall be considered as a factor in determining whether exceptional circumstances exist for purposes of subparagraph (c)).

(iii) As used in this subparagraph, "unusual circumstances" means, but only to the extent reasonably necessary to the proper processing of the particular requests--

> (I) the need to search for and collect the requested records from field facilities or other establishments that are separate from the office processing the request;
>
> (II) the need to search for, collect, and appropriately examine a voluminous amount of separate and distinct records which are demanded in a single request; or
>
> (III) the need for consultation, which shall be conducted with all practicable speed, with another agency having a substantial interest in the determination of the request or among two or more components of the agency having substantial subject-matter interest therein.

---

[2]These recommendations are based on the assumption that the plaintiff will not engage in discovery. The subject of discovery is also discussed in this report.

5 U.S.C. §552 (a)(6)(A)(I) and (B)(i)(ii) and (iii).

The defendant sets out the history of the plaintiff's requests for the contents of the EEOC case file involving her discrimination claim:

> Upon receipt of Plaintiff's November 13 [2001] FOIA request, Mr. Guerrier, Regional Attorney for the EEOC's Birmingham District, assigned to one of the three EEOC employees with FOIA responsibilities in order to obtain the requested file and prepare a response (Guerrier Decl., ¶ 7). The EEOC's Birmingham District Office had a backlog of approximately 500 pending FOIA requests in November (Id.). Exacerbating this FOIA processing burden was the November 13, 2001 departure of the Supervisory Trial Attorney responsible for overseeing Birmingham's FOIA processing and the transfer of one of the three employees with FOIA responsibility to another area of responsibility (Id.).
>
> While Plaintiff's FOIA request was in queue, non-FOIA correspondence was received by the EEOC from the attorney representing Ms. Cain (Guerrier Decl., ¶ 10). This non-FOIA correspondence was assigned to EEOC staff without FOIA responsibilities (Id.). The assigned EEOC investigator removed the Cain charge file from the Birmingham Office's file storage room to process the non-FOIA correspondence (Id.).
>
> For unknown reason, the "temporary location card" which should have occupied the space of the withdrawn Cain charge file was not present; either the EEOC investigator forgot to fill out the card or the card was lost in the normal shuffle of files in the storage room (Guerrier Decl., ¶ 13). Those cards inform EEOC staff of the location of a withdrawn file. The absence of the card prevented the FOIA staff from locating the Cain charge file in order to process the Plaintiff's request.
>
> The Plaintiff apparently sent two follow-up letters to the EEOC, one on January 21, 2002 and another on April 16, 2002 (Complaint, ¶¶ 6-7) (Guerrier Decl., ¶ 8, Exs. 4 and 5). These letters never reached Regional Attorney Guerrier, presumably because the letters were addressed to Pinkey Johnson, who had not been employed by the EEOC for at least two years (Id.).
>
> On April 23, 2002, another follow-up letter was personally delivered to the EEOC Birmingham Office (Guerrier Decl., ¶ 9, Ex.6). The Plaintiff's April 23 letter, addressed to the District Director, demanded an EEOC response to the pending FOIA request within 10 days or a lawsuit would be filed (Complaint, ¶ 3) (Guerrier Decl., ¶ 9, Ex. 6). Director Pierre directed the letter to Regional Attorney Guerrier, who then became actively involved with the Plaintiff's FOIA request for the first time since November (Id.). After learning from the FOIA process that the file could not be located, Mr. Guerrier directed an office-wide search and found the Cain charge file in the office of the investigator who had taken the file from the storage room to process Ms. Cain's non-FOIA correspondence (Guerrier Decl., ¶ 10); the investigator had been holding the file pending correspondence with Ms. Cain (Id.).
>
> Upon finding the file, the FOIA request was processed as quickly as possible (Id.). The EEOC responded on May 16, 2002, ten days after Plaintiff filed this lawsuit on May 6, 2002 (Complaint; Guerrier Decl., ¶ 11, Ex. 7). The EEOC

3

subsequently released one of the five pages which were originally withheld after redacting privileged information therefrom (Guerrier Decl., ¶ 12).

*Defendant's Memorandum*, pp. 2-4.

In addition to her claim for attorney's fees, the plaintiff contends that "[w]hen an agency cannot be motivated in months of polite requests, will not and did not explain any necessary extension, declaratory and/or injunctive relief to remedy these admitted, persistent violations and self-described disorganization are appropriate." *Plaintiff's Response*, p. 17. The plaintiff further states:

> Where the plaintiff has accomplished but one goal after filing suit and has sought from the outset declaratory and injunctive relief to remedy systemic production and notification problems, the "tardy" production of records is not sufficient relief. If EEOC does not rectify its non-responsiveness, or at best, sloppy and erratic FOIA response methodology, then the public will continue to suffer either in silence by not having the resources or the will to fight or by individually raising the same issues in Court over and over.
> Declaratory and/or injunctive relief can establish a mechanism that requires EEOC response to FOIA requests just where Congress intended: at the top of the list of things to do promptly. The plaintiff, while requesting attorney's fees in the complaint, does not merely want a reimbursement of its costs and expenses. It wants solid progress shown that this action has been a necessary and worthwhile process that will be applicable to its own future FOIA requests and to those filed by others, whether plaintiff or defendant.

*Id.* at 20.

### Request for Attorney's Fees

"Under FOIA, district courts 'may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed.' 5 U.S.C. § 552(a)(4)(E)." *Tax Analysts v. U.S. Department of Justice*, 965 F.2d 1092, 1093 (11th Cir. 1992). It is noted, however, that there

is a difference in considering awarding attorney's fees in civil rights actions and in FOIA actions, as "the rule of presumptive award of attorneys' fees in the civil rights context was not to be applied directly to awards of attorneys' fees in the FOIA context." *Blue v. Bureau of Prisons*, 570 F.2d 529 (C.A.Ga. 1978).

The facts in *Tax Analysts* show that there was six years of negotiations over whether the records in question could be properly withheld. A lawsuit was filed, and the plaintiff was found to be entitled to the information requested. Even though the plaintiff clearly prevailed, the trial court still had to determine whether it thought attorney's fees *should* be awarded. There were four factors the trial court had to apply in making that determination:

> This [Circuit] Court has directed the district court to consider at least four criteria in determining whether a substantially prevailing FOIA litigant is entitled to attorney's fees: (1) the public benefit derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) the reasonableness of the agency's withholding. *See Weisberg*, 745 F.2d at 1498; 132 *Cuneo v. Rumsfeld*, 553 F.2d 1360, 1364 (D.C.Cir.1977); see also S.Rep. No. 854, 93rd Cong., 2d Sess. 17 (1974). The sifting of those criteria over the facts of a case is a matter of district court discretion, *see Church of Scientology v. Harris*, 653 F.2d 584, 590 (D.C.Cir.1981).

*Id*. at 1093.[3] The district court denied the request for fees, and the circuit court affirmed that

---

[3]The district court granted summary judgment in *Weisberg v. U.S. Department of Justice*, 842 F.2d 1265 (C.A.D.C. 1988). In reviewing the judgment in light of the evidence, the court stated:

> But the District Court found, as a factual matter, that the Department succeeded in breaking the apparent causal chain. There is evidence in the record to support this determination, namely the Shea affidavit; under these circumstances, we are constrained to conclude that the shield of the clearly-erroneous rule protects the trial court's finding.

*Id*. at 1269.

discretionary decision.

>   The criteria are also explained in *Fenster v. Brown*, 617 F.2d 740 (C.A.D.C. 1979):
>
>> Under the first criterion a court would ordinarily award fees, for example, where a newsman was seeking information to be used in a publication or a public interest group was seeking information to further a project benefitting the general public, but it would not award fees if a business was using the FOIA to obtain data relating to a competitor or as a substitute for discovery in private litigation with the government.
>>
>> Under the second criterion a court would usually allow recovery of fees where the complainant was indigent or a nonprofit public interest group versus (sic) but would not if it was a large corporate interest (or a representative of such an interest). For the purposes of applying this criterion, news interests should not be considered commercial interests.
>>
>> Under the third criterion a court would generally award fees if the complainant's interest in the information sought was scholarly or journalistic or public-interest oriented, but would not do so if his interest was of a frivolous or purely commercial nature.
>>
>> Finally, under the fourth criterion a court would not award fees where the government's withholding had a colorable basis in law but would ordinarily award them if the withholding appeared to be merely to avoid embarrassment or to frustrate the requester. Whether the case involved a return to court by the same complainant seeking the same or similar documents a second time should be considered by the court under this criterion.
>>
>> It should be noted that the criteria . . . are intended to provide guidance and direction not airtight standards for courts to use in determining awards of fees.
>>
>> These criteria were expressly stated in S. 2543, 93d Cong., 2d Sess. (1974), as passed by the Senate. House and Senate conferees, however, dropped specific mention of the criteria from the final bill. The Conference Report stated:
>>
>>> By eliminating these criteria, the conferees do not intend to make the award of attorney fees automatic or to preclude the courts, in exercising their discretion as to awarding such fees, to take into consideration such criteria. Instead, the conferees believe that because the existing body of law on the award of attorney fees recognizes such factors, a statement of the criteria may be too delimiting and is unnecessary.

*Id.* at 742, FN 4 (citations omitted). In *Fenster*, the government, after resisting disclosure for eight years, released the manual sought while the case was pending in court, apparently without an adjudication that compliance was required. Nevertheless, the plaintiff was

6

considered as having "prevailed," and the court proceeded to consider (and deny) the plaintiff's request for attorney's fees.

With respect to prevailing party where there was compliance with the request after a lawsuit was filed, the Circuit Court for the District of Columbia stated:

> The determination of whether a party substantially prevailed (in the absence of a final judgment in his or her favor) is "largely a question of causation." *Weisberg II*, 745 F.2d at 1496. A party seeking to establish his or her eligibility for fees "must show that prosecution of the action could reasonably be regarded as necessary to obtain the information ... and that a causal nexus exists between that action and the agency's surrender of that information...." *Cox v. Department of Justice,* 601 F.2d 1, 6 (D.C.Cir.1979). It is clear, however, that "the mere filing of the complaint and the subsequent release of the documents is insufficient to establish causation." *Weisberg II*, 745 F.2d at 1496 (citing *Crooker v. Department of the Treasury*, 663 F.2d 140, 141 (D.C.Cir.1980).

*Weisberg v. U.S. Department of Justice*, 848 F.2d 1265, 1268 (C.A.D.C. 1988). It was also stated in *Church of Scientology v. United States Postal Service*, 700 F.2d 486, 491 (9th Cir. 1983):

> [T]he court in *Cox* stated that whether a party has shown that the lawsuit was reasonably necessary and that it had a substantial causative effect on the release of documents is a factual determination that is within the province of the district court to resolve. 601 F.2d at 6. In making this determination, it is appropriate for the district court to consider, among other things, "whether the agency, upon actual and reasonable notice of the request, made a good-faith effort to search out material and to pass on whether it should be disclosed." *Id*. If either lack of actual notice of a request or an unavoidable delay accompanied by due diligence in the administrative processes, rather than the threat of an adverse court order, was the actual reason for the agency's failure to respond to a request, "then it cannot be said that the complainant substantially prevailed." *Id*.

Although the cases cited by the parties discuss the criteria for awarding attorney's fees, and are instructive on that question, the facts in those cases involve actual disputes between the requesting party and the responding governmental agency. In the case before this court,

7

there was no dispute between the parties as to the materials to be released to the plaintiff.[4] The defendant was simply months late in acting on the plaintiff's request, mainly because of a large number of requests, the departure of a supervisor, the failure of an employee to note that he had taken the file, and the failure to transfer the plaintiff's request addressed to a person no longer an employee with the defendant to a proper person. In other words, it appears there was too much work to respond to the plaintiff's request in the time required and certain individuals failed to handle the plaintiff's request and her physical file properly. At the time the lawsuit was filed, however, the request was being processed as it should have been.

    The evidence before the court cannot support a finding that it was the threat of a lawsuit that caused the defendant to respond to the plaintiff's request. The evidence shows that the defendant was preparing to given the plaintiff the information it requested *before* the lawsuit was filed. Even if it could be determined that the plaintiff was a prevailing party with respect to obtaining her EEOC materials, the question remains whether the court should exercise its discretion and award attorney's fees. There is no public interest involved in the plaintiff's request for her EEOC records, such as there would be in a newsman's seeking information to publish for the public's enlightenment. Although discrimination is a matter to be corrected, the plaintiff was concerned only about pursuing her own case, which, according to the plaintiff, was dismissed. Although unreasonably delayed, the information was not

---

[4]The defendant withheld certain materials based on certain statutory exceptions, but there apparently is no issue concerning those documents.

purposely withheld.[5]

The next question is whether the plaintiff may be entitled to injunctive relief. If so, this action must continue, and the question of attorney's fees will become an issue again.

## Injunctive Relief

The case of *Swan View Coalition v. Department of Agriculture*, 39 F.Supp.2d 42, 46-47 (D.D.C. 1999) sets out instructive law on the question of the propriety of injunctive relief:

> In certain instances, a court may grant declaratory relief to a plaintiff even though the plaintiff's specific claim regarding a FOIA request is moot. One such instance arises when a plaintiff challenges an isolated agency action and the plaintiff's claim becomes moot during the course of litigation because the defendant voluntarily ceases to engage in the allegedly illegal conduct. *See United States v. W.T. Grant Co.*, 345 U.S. 629, 632, 73 S.Ct. 894, 97 L.Ed. 1303 (1953); *Houston v. Department of Housing and Urban Dev.*, 24 F.3d 1421, 1429 (D.C.Cir.1994). Another instance arises when a plaintiff challenges not just an isolated action, but also an allegedly illegal agency policy and the future implementation of that policy. *See Houston*, 24 F.3d at 1430. In either of these instances, the court undertakes essentially the same analysis to determine-whether declaratory relief is appropriate. Specifically, the court considers the defendant's conduct both before the allegedly illegal action took place or policy was implemented and after the action ceased or policy was discontinued. *See W.T. Grant*, 345 U.S. at 632-33, 73 S.Ct. 894; *Payne Enterprises, Inc. v. United States*, 837 F.2d 486, 491-92, (D.C.Cir.1988). Additionally, the court considers the nature of the alleged violation and any expressions of intent or assurances of future compliance offered by the defendant. *See id*. Taking all these considerations as a whole, a court will generally grant declaratory relief if "there exists some cognizable danger of recurrent violation." *W.T. Grant*, 345 U.S. at 633, 73 S.Ct. 894. If, however, "there is no reasonable expectation that the alleged violation will recur," the court will generally deny declaratory relief. Payne Enterprises, 837 F.2d at 491-92.
>
> Because the court's analysis is essentially the same whether the defendants' allegedly illegal conduct is characterized as an isolated action that was voluntarily ceased or an agency policy that may impede the plaintiffs' future access to information,

---

[5]The lawsuit, of course, was brand-new when the defendant gave the plaintiff what she sought. If fees are awarded, therefore, they would be based on relatively little litigation work by the plaintiff's counsel at the time the documents were furnished.

the court need not resolve the parties' disagreement regarding the actual existence within the USDA of a policy to ignore FOIA requests. Instead, the court's analysis will focus on a review of the considerations articulated in *W.T. Grant and Payne Enterprises* to determine whether declaratory relief is appropriate in this case.

With respect to the plaintiffs' three 1997 requests, the USDA does not dispute that it failed to respond to those requests within the time mandated by the FOIA. The USDA contends, however, that these violations were an aberration and that agency policy is now and always has been to response to all FOIA requests in a timely manner. (Christophersen Decl. ¶ 19.) The USDA offers as evidence its pre- and post-1997 levels of performance in responding to such requests. It is undisputed that from 1993 to 1997 the USDA timely responded to eighty-five of the plaintiffs' FOIA requests. In January 1998 the USDA responded to the plaintiffs' three unanswered FOIA requests from 1997, and since then it has responded to all subsequent requests in a timely manner.

The plaintiffs argue that the USDA responded to the three unanswered requests in January 1998 only after the plaintiffs initiated the present suit. Specifically, the plaintiffs assert that absent the threat of suit or court order mandating compliance with the FOIA, the USDA will continue to ignore the plaintiffs' and others' requests. The plaintiffs, however, have not offered any evidence to support their assertion. The USDA, on the other hand, has offered a plausible explanation for its performance during 1997. Ms. Warren and Mr. Allen Christophersen, the Acting Supervisor for the Flathead National Forest, submitted declarations indicating that the delay in responding to the plaintiffs' requests was caused by office downsizing and reorganization due to budget cuts. (Christophersen Decl. ¶ 16.) Specifically, because of the downsizing and reorganization it was necessary for Ms. Warren to assume greater management and supervisory responsibilities than she had in past years, thus reducing the time available for processing FOIA requests. (Warren Decl. ¶ 14- 15, 19, 21.) Mr. Christophersen indicated that he anticipates a return to pre-1997 levels of performance now that the reorganization is complete. (Christophersen Decl. ¶ 19.)

The uncontested evidence proffered by the defendants demonstrates to this court that the failure of the defendants to respond in a timely manner to the plaintiffs' 1997 FOIA requests was indeed an aberration. The record establishes that the defendants' noncompliance was limited to a discrete period of time: approximately seven months between February 1997 and September 1997. The record further establishes that the defendants' conduct before and after this period in 1997 is one of compliance with the provisions of the FOIA. Moreover, the defendants' history of responding to FOIA requests from the plaintiffs and others both before and after 1997 supports the assertions of Ms. Warren and Mr. Christophersen that office downsizing and reorganization caused the delays in 1997 and that, in the future, FOIA requests will be responded to in a timely manner.

Having reviewed all of the considerations relevant to determining the appropriateness of declaratory relief, the court concludes based on the record before it in this case that it is unlikely that the USDA has in the past or will in the future invoke a policy of delay in responding to FOIA requests. It is the determination of this court, therefore, that there exists no cognizable danger or reasonable expectation of

recurrent violations of the FOIA by the defendants. Accordingly, the court rules that declaratory relief is not appropriate in this case.

The plaintiff wants this court to "establish a mechanism that requires EEOC response to FOIA requests just where Congress intended: at the top of the list of things to do promptly." What happened in this case, however, was apparently merely a temporary lack of manpower and failure on the part of certain of the defendant's employees to perform their jobs with due diligence, not a refusal or unwillingness to comply with the law. There is no evidence that this set of events is widespread or chronic. What happened to the plaintiff's request certainly does not represent policy. Therefore, ordering the defendant "to establish a mechanism to put FOIC requests at the top of the list of things to do promptly," whatever that entails, is not injunctive relief that should be ordered in this case.

<u>Discovery</u>

In her brief, the plaintiff mentioned that she was not allowed to conduct discovery. There was a previous dispute about whether or when the plaintiff should be allowed to conduct discovery. Discovery was not allowed before the defendant filed its motion for summary judgment for the reasons set out in the order (ct. doc. 13) granting the defendant's motion for protective order. If, after consideration of this report and recommendation, the plaintiff thinks her case could be aided by discovery, she should so state, and explain, within

the ten (10) days provided for the filing of objections.

DONE this 25th day of October, 2005.

_____
ROBERT R. ARMSTRONG, JR.
UNITED STATES MAGISTRATE JUDGE